Thank you, Your Honor. May it please the Court, my name is Jaime Hossel and I represent Peter James Bingham. And that was one of the first issues I was going to address with the Court. I actually, in fact, believe that the document is material. In my motion for the clerk to reconsider, I ask the motion to be transferred to this panel to reconsider the decision of the clerk's order granting the motion to supplement the record. And the reasons set forth in my motion, of course, are very straightforward in terms of although I do respect the materiality and it, in fact, is relevant, I just requested a fair opportunity to address the actual specific waiver that's being presented after briefing in which I dedicated over half of my opening brief as well as my reply brief to the nonexistence of the waiver because over a year, almost a year had passed since the Court's order requesting that the Respondent produce the document. None of the document was never produced, and so as attorneys, I'm sure the Court is aware, under time limitations and restrictions, I have to dedicate certain portions of time to the preparation of my briefs. I certainly would have dedicated the entire opening brief and the reply to the existence of the waiver. So if the Court is inclined to grant the government's motion to supplement the waiver, I would request that instead of submitting the case today, I would be requesting a fair opportunity to respond to the actual waiver. Kennedy. Counsel, let me just inquire from you. How much time would you feel you needed to write a supplemental brief? Less than 30 days, Your Honor. 30 days? What would you say? In essence, I need to compare the actual – now that we have the waiver, we have the specific language in which the Petitioner signed, assuming I haven't yet to give the document to the Petitioner. He's detained in Santa Ana. But assuming that it is his signature and he confirms the authenticity of the actual documentation, now we can actually compare the specific language that he signed to what the statute says, the regulations say, as well as what is the current effect being – how that waiver is being interpreted by the Los Angeles district office. Apparently, despite this court's holding in Momeni, the Los Angeles district office, through the district director, Jane Audiano, is allowing adjustments of status to proceed locally despite the court's holding in Momeni. Apparently, the court's decision in Momeni is – although it may stand for the proposition that the lower court – well, let me address Momeni in its entirety. Momeni dealt with the appeal from a district court's decision where the district court said there was a lack of jurisdiction. That was the sole issue in Momeni. Once the Ninth Circuit Court of Appeals affirmed that decision, the issue in Momeni was resolved. However, Momeni continued on with the merits of the case despite no indication in the record that there was a request from either party to transfer the case from the district court to the appellate court level as a petition for review in the original instance or that the court was in fact treating the appeal as an original PFR. However, Momeni stands for the proposition agreeing with the Tenth Circuit decision saying that there is a conflict between the adjustment of status statutes and the waiver provisions of 217B or 1187B. Well, essentially, we're kind of – we're at this juncture here where you have this statute that basically – if people didn't sign it, they don't get to come in. All right. So – and so now what is essentially being asked is that we want to create this whole additional constitutional structure of – you know, I mean, otherwise then it's like we should just tell, no, you can't come in. So – but now we want to create all these due process rights over here and, you know, as if we don't already have enough when people already get in here, then, you know, we've got a whole set of practically unintelligible case law regarding there. But now we want to create this whole other thing here, whereas the easy thing would have been to say, well, hey, don't sign it. Don't come. You know, whatever. So you've got that going on. But let's assume – let's – okay. We found the waiver now. So let's assume – how would he be prejudiced by his allegedly unknowing signing of the waiver? Because you've got – I'm assuming on some level we've got the bio case out of the Seventh Circuit. Yes, Your Honor. To address – well, let me address the last first. Prejudice. There's different forms of prejudice throughout the course of these proceedings. Well, but let's use the type of prejudice that we use in these type of cases. The prejudice can't be I don't get what I want. All right. That's the – and that's what people frequently like to define as prejudice. No, no. In fact, it's the constitutional prejudice of being deprived of the process. You have the first original prejudice that occurs at the time of the purchase of the ticket. He's not informed of any kind of waivers provided by the local embassy. He's not provided of the waivers provided by or informed of such waivers as we know from the local airlines or from the airport itself. We have – so we – he's not informed of the waiver at that time. You have the actual waiver being presented to him at the time of arrival inside the United States. The waiver itself doesn't correspond to the governing statutes. It doesn't correspond to the governing regulations. So even under the theory that he's presumed to know the law, the law does not correspond to the actual waiver itself. Well, but it kind of falls under this category of no good deed goes unpunished. It's like, you know, it's – all they could have – they could have said no. That would have been the end of it. We wouldn't have had him here all this time illegally and could have said no, turned him around. He wouldn't have had anything to say. If the waiver had actually said – Well, but if they had just said no right there because he didn't have a visa. No, he's out all the money. He wouldn't be able to get anything back. But they – he signs it, they let him in, and he stays here for how long? Until 7. Until what? Today. So that – and that was back when? March of 07. Okay. Okay. So, you know, I guess we should just say no to everyone. It is – well, if you go based on the theory of the government's position, which is to make sure that terrorist activities are – or suspected terrorists are – No, if you go by the whole thing that you don't have a right to be here if you're an alien, then we should just say no to everyone because once we say yes or put any conditions, then we create a whole new constitution – you know, then people ask to have a whole new constitutional structure, whereas if we had said no in the first place, we would have been perfectly within our rights and nothing would – we wouldn't even be sitting here. I believe the court is – But now you're saying that we have to have a separate constitutional hearing to ascertain whether this was a knowing involuntary waiver and he – The court is actually correct. If you do not confer due process rights upon the individual, then the individual does not have the ability to complain about the due process rights that they were given. So in this case, since the individual was conferred the due process rights of having been admitted into the United States and those due process rights were conferred upon the individual. Well, no, but you're asking us to confer due process rights. There's no right – isn't that what you're asking us to create at this point? There isn't a case that said your client has due process rights now, right? Landon v. Placentia absolutely says that the individuals, whether they are – There's a case under the VWP that says that there's a constitutional requirement to have a knowing involuntary waiver? There is knowing involuntary waivers produced – excuse me – holdings from the Fifth Circuit, the Seventh Circuit, all indicating that – I'm talking the Ninth Circuit. No, Your Honor. We're in the Ninth Circuit. No, Your Honor. There is no – So this is a first case of first impression. Absolutely. That is correct. However, the waiver still deals with the due process rights of the individual to whether or not the waiver itself is a knowing involuntary waiver itself. The government's position of the presumption that the alien is fully aware of the law is in fact a separate issue. It is not an issue regarding the waiver. The issue is a determination of whether the individual waived the law that the government says they are presumed to have known. So in that context, it is a determination of whether or not the waiver itself is knowingly and voluntarily given effect. Well, it wasn't voluntarily. The question is what knowingly means. Yes, Your Honor. It's more of an effect of knowingly. Counsel, why wouldn't you – why wouldn't there be a presumption that when a person signs something that they know what they're signing? In this context, the presumption that the government is contending is a presumption that satisfies the knowing involuntary waiver aspect of it. The presumption as is indicated by the Seventh Circuit in the Bayou decision indicates that that is in fact it was declared pursuant to that court as a radical departure from current precedent authority within our nation. Any waiver itself, the courts from the Supreme Court's decision indicates that the courts will generally presume every reasonable presumption against the finding of a waiver. Well, but then do we need to have a – does your client then have a constitutional right to have an interpreter there to make sure to go over the waiver with him? That was an interesting aspect in the case from I believe it was the Fifth Circuit. No, it might have been the Seventh Circuit as well. I mean, it's outside what you're saying. We need to have like a little courthouse, right, where they're signing these waivers and provide people with, you know, an interpreter, you know, make sure that it's knowing involuntary and all of that when what you could do is, hey, you don't have a visa. No, you're not coming in. It would appear logical that if you want the individual to knowingly and voluntarily sign and waive out the process rights, that the individual be informed in that person's language or actually have some system in place. So your client is from Britain? Yes, sir. Speaks English? Yes, sir. And I assume he doesn't – you must have had enough time to show him this document that the government claims he signed. Does he say he didn't sign it? No, actually, I haven't showed him this document. What we've been basing our briefs on is the – what an I-94W generally looks like. I know. But did he sign this? Did you contest that this is – does he say he didn't sign anything? No, I have yet to actually have him say that this is his signature, but I do not expect that he would actually contest it. What would be logical – And what would have happened then? So he would have been – so he didn't know that he could come into the United States without a visa. What would have happened if he – they just would have sent him back. He would have applied for a B-1 or a B-2 visa. Right. So what is this? The prejudice is how much it costs them to fly to the United States. Is that it? No, Your Honor. The prejudice occurs when the waiver itself doesn't correspond to the statute and regulations. The regulations actually do not suggest, as other courts have said, that it deals with the physical removal of the individual from the United States. It is actually a finding of deportability, a finding of removability. In fact, the waiver itself doesn't even have language appropriate to today's statutes. There is no deportation. We haven't had deportation since 1996, yet it refers to it. However, if he's presumed to know the law, he would have found out that 1187 doesn't also reference physical removal from the United States. You're actually on your overtime. Unless other counsel has questions – I mean other panelists, I'll give you two minutes for rebuttal, even though you've used your time. But this is an important issue, and we have another case following that is related. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court. My name is Brooke Maurer for the respondent, the Attorney General. If I may first address the initial claim that the order he was referring to for us to file the I-94, I believe the order was issued for us to file the administrative record, and there was no specific statement including the I-94. And unfortunately with this case, I have delved into the I-94 processing into a point where I think my head is swimming. I can give you a brief background and kind of explain to you how the process works with how we obtain the record from ICE. Typically they give us the physical copy of the record. I-94s are processed by a group outside the government, and they are kept in what's called – they're scanned in and you get screenshots where you actually – as you see by the PDF that was submitted to you as the supplemental addition to the record. So when we get it from ICE, when they send us the record, they send us the physical copy and there's no physical copy of the I-94. Up until this point, they had not included the I-94 because that was typically the document they had used to issue the removal order. And because it was already issued, they basically went from the removal order forward. So how many people are like this out there? Like this? That are in this situation where they signed these waivers, they never left, and now we're trying to? Well, we know that the year that he entered, there were 16 million people that entered under the Visa Waiver Program itself. We've seen an increase in the last five or six years of people that have overstayed. Very – and this is one of the first cases where they're arguing for the production of the I-94. And I have – personally, I have at least five cases. Well, the Fifth Circuit said that – I forget the name – the Nose case? Yes. And they said that they had ruled that it had to be knowing and voluntary in the sense that's being argued for here, and that the world hadn't come to an end in the Fifth Circuit, that there didn't seem to be any great problems. Well, we respectfully disagree with that. And as Congress's intent was made clear in the statute itself, they did not include knowing language in there. They signed the document prior to entering the United States. And plus, I mean, it should be pointed out that the petitioner – No, no, but what I understand the Fifth Circuit was dealing with the government's argument about the practical problems that would happen if it was read to – construed to mean they had to actually know what rights they were giving up. And they said that, you know, the Fifth Circuit, we have millions of people that come through here, and there doesn't seem to have been any great problems presented by the fact that we so held. Is that accurate? Well, I would – obviously, as the government, we would beg to differ. I mean, as you can see, it was just the regular immigration system. If you come and enter – I mean, we've got issues with the other statute, and this was created to expedite a process. And it's like a vis-a-vis thing. You don't have to get the B-1 waiver. We're giving you, you know, a quid pro quo. You don't have to do this, so we're going to grant you these 90 days and make your life a lot easier. Well – He could have easily just changed his mind, gotten – I don't want to sign this. I don't know what I'm signing, and gone back. And – I have – I guess what – I'm only speaking for myself, because we don't talk about cases before we come in. But as you can tell, I'm telling – I'm assuming that counsel is – you know, that what they're asking for is essentially to set up, you know, a whole – to recognize some sort of due process right at that particular stage in a whole process. I have some real questions about that. But you understand, also, if we take the position that you're now espousing, the other circuits seem to be recognizing some sort of due process right there, but then they're finding no prejudice. And – but if we say there is – if we say there is no right there, and follow the government – you know, the government's position, and we publish on that, we are creating a circuit split, and we're inviting the Supreme Court to weigh in. Do you disagree with me? No, I do not disagree with you at all. Okay. But – So tell me what your position is here, what we – how we should – how these should be handled, because you're not agreeing with how the other circuits have – the cases that have come out entirely. You may not be disagreeing with the result or anything like that, but you're not agreeing with how they've analyzed it. Well, technically, where the waiver is signed outside, it does not confer any additional rights when he came in here. As I stated, he could have easily turned around, decided not to sign it, and gone out back. But just to make, like, a side point, if I may, the petitioner wasn't completely ignorant of a process. He was aware of at least some statutory requirements under 1187, and that he – he applied for a round-trip ticket. He did have other avenues that he could have gone, and he chose to enter under a visa waiver program. I personally would not be able to get into Mexico or elsewhere if I didn't have a visa if I wasn't traveling under a visa waiver-type program. I couldn't decide to go to, like, Bangladesh and fly somewhere. And I would think that in that point has to be made to the Court, because he can't comply with 90 percent to 100 percent of the statute before entering. Now, in cases where they do enter and perhaps they do not speak English and they do come in, I still do not believe, or we still do not believe, that it confers a right, because the way that they're traveling, Congress made it clear that you are coming here for 90 days, you have every requirement to leave upon the expiration of that 90 days, and it doesn't confer any additional due process rights upon your entry, as you could just as easily decline to sign and go back and then obtain a visa and come back for an extended period of time. Counsel, Judge Gould, if I could ask you a question, please. Sure. Assuming, and I realize this is hotly in dispute, but assuming that a person has a due process right to make a knowing waiver when they're outside the country of rights that they would be able to exercise inside the country, because assuming that we say there's some due process right attached to an agreement to give up rights that you would have when you are here, what's the government's position on the analysis that there's no prejudice? Well, the government believes that he wouldn't be prejudiced, because even if he came in and had it executed and it was required to do a knowing waiver, he had knowingly waived his rights, he would still be required to leave upon the expiration of the 90 days, which the Petitioner in this case failed to do. There is, I mean, a sort of... So essentially no one would ever be able to show prejudice. Well, I just, I'm not, unless there was some, I guess, I mean, would be some beating in the middle of immigration and the authorities were doing something horrifying, which I don't think I've actually read about. But, I mean, I just can't see how there can be a claim that you were here for 90 days, you were given this right to, you know, escape having to get a B visa, and you have these 90 days. You're under that obligation, especially, I mean, not saying that there is a knowing waiver, but especially if you made a knowing waiver. You would be obligated to leave after those 90 days, because you knowingly asked, you know, agreed to enter under that provision. But the Seventh Circuit and the other cases that find no prejudice talk about it in terms of at the time of signing. They said if you don't want to sign it... You don't have to. If you, it was all explained to you the way it should have been, and it was knowing to the hilt. You would have either not signed it, and you would have gone back, or you would have signed it and you would have affirmatively waived and satisfied all the waiver requirements and therefore there's no prejudice. In fact, the form says that I certify that I have read and understand everything. Mm-hmm. Yes, it does. That's the no prejudice argument. And wouldn't that be true in almost every case? Yes. So we don't even have to reach... No, I don't believe that you have to essentially go to the prejudice step. No, no. We don't have to reach the... I thought that what my colleague was asking was, couldn't we say assuming that there's such a due process right, there's no prejudice? Judge Corman, I don't mean to put words in your mouth. That was exactly my question, yes. Yes. So is there any reason from the government's point of view that a resolution on that line would wreak havoc in the Visa Waiver Program? I mean, no, not necessarily. The waiver itself speaks for itself.  I mean, if you're assuming a right, are you talking from a published perspective or just from an unpublished perspective? That's, I guess, from a published perspective, you would have to kind of think that through a little more. Oh, I'm sorry. No. Well, obviously. I mean, if you want me to be happy to expand upon that in further briefing, if you'd like, but... No, I, well... Well, the question, ultimately, is do you care on what ground you win? In other words, if we say we don't have to, we don't need to decide the issue of whether it has to be knowing in the sense that's been argued, because there's no prejudice if we decide it on the narrow ground. I mean, the Seventh Circuit decided both. They decided, yes, it had to be knowing and voluntary, but there's no prejudice. We could say we don't have to reach the knowing and voluntary because there's no prejudice. No, I mean... You care? Does the government have some sort of an institutional answer? I don't believe that we have an agenda, like, in regards to that. But, you know, as I said, conferring with, you know, co-counsel would also be great to have them there, too, but... I know you'd like us to make a split with the other circuits so you could ask the Supreme Court to resolve, but I guess I'd like to hear a rebuttal argument from the petitioner as to on this prejudice issue. All right. If we could give petitioner a little extra time, I'd appreciate it, because I think I took up some of his starting time on that issue of supplemental briefing order. Well, I told him I would give him two minutes, but we'll say that you have as long as Judge Gold wants to hear from you. Thank you. Actually, what I'd like to hear is from the point of view of your client and people like your client, what possible argument do you have, once he's been here, you know, longer than the permitted time? Yes, Your Honor. There's prejudice in removing him. Yes, Your Honor. It really comes down to how immigration law works. If due process is found to be found in this case to apply to the waiver, it first refers to deportability or removability. Once removability is established, how our immigration laws would normally apply is that, is there relief from removability? Not all applicants or visa waiver overstays would qualify for any kind of application for relief. You have one specific application that you can always apply for, and that's the asylum application. That is contained in both the statute and the regulations. In addition to that, such as the applicant here, he would be eligible for adjustment of status, and that brings us to how local operating procedures are working within every respective different district office. In this case, and it's facts outside the record, but he has a U.S. citizen fiancé. He was denied his opportunity to marry that U.S. citizen fiancé while he was located at the sheriff's detention facility up in Lancaster. A new request has been submitted to the local detention facility in Santa Ana to allow them to marry the U.S. citizen spouse. Upon marriage to the U.S. citizen spouse, he would be eligible to adjust status under 1255A of the U.S. Code Section or 245A of the INA. The adjustment of status allows him to obtain his lawful permanent residency as a result of his lawful admission to the United States. It has no respect as it was. Well, this is everything he wants to do. How is that prejudice under the law? He's been denied an opportunity to apply for statutory relief. He's eligible under the statute itself. Well, but do you, but I think that's not the prejudice that, the prejudice has to be from not being able to, that he has to leave after the 90 days or that he has to be turned around. It's not like, well, you know, he could be here 20 years, and then the next thing he could say is, well, I, you know, I can't, you're going to split up my family. You're going to do all of those things. I mean, that, I don't think that's, is, what's his prejudice here? Before you were saying it was his plane ticket and this, that, and the other. I never got to finish the entire timeline, but it does ultimately end with the prejudice that he suffers now. You have the original prejudice that occurs at the time of the purchasing of the ticket. He has the second prejudice that occurs at the time of his arrival. He has another prejudice that occurs at the time of his detention where he is now being denied. He now suffers the prejudice of being denied statutory rights and immigration relief as a result of the, of the government's interpretation of his waiver. Because he didn't marry his fiancée before he went to jail? No. So. Well, as a result of both being denied the opportunity to marry his fiancée and then seek the adjustment status. But she was his fiancée before he went to jail, right? Yes, but that, I don't see how you're able to disregard the fact that his, he intends to marry the U.S. citizen and then is being denied his statutory relief under U.S. Act 155. Let me try to focus a question that's on my mind, please. Let's assume that he'd been given, you know, a hundred pages of clear explanation about the visa waiver, and he had decided to enter. He'd still have to leave after the required time, right? Yes. Yes. If the waiver. Perhaps in the silence. Well, let's assume that he was given, you know, not such great information so that his waiver wasn't knowing. But still, he would have had to, if, if it had been knowing, he would have had to have left at the end of the period, if he came. Or if he didn't want to come, he wouldn't have come. He would have to leave. I'm not saying what the prejudice is. You know, in terms of either he, if he'd had a full, full and fair disclosure so he could make a knowing waiver, then, you know, maybe the form does that. But if it didn't and he needed something else, if he, if he had that, he would either have not signed it and gone home, or he would have signed it and been here and been subject to removal when the time was up. That is correct, if he was not eligible for a different form of relief before the service. If he, if he signs the form. Sotomayor, I thought, I thought he's not eligible for other relief if he comes in under the Visa Waiver Program. That is not necessarily correct. The Court's interpretation so far has dealt with the regulations found at 217.4, I believe it's B-1. And that indicates that the individual shall be removed from the United States. There's no indication whether or not it is the physical removal from the United States or a finding of, a finding of removability. B-2, which no court that I have seen has actually explored, actually reveals that B-2 indicates that removal under B-1 is the equivalent in all respects and has the same consequences as removal after proceedings under 240 of the Act. That further clarifies that removal under B-1 is not a physical removal from the United States, but a finding of removability. After a finding of removability, as any immigration practitioner could tell you, is there, is there relief available? The statute itself does not indicate that it's a physical removal. It's simply a finding. That is further confirmed by the order that the individual receives upon the finding of removability by an immigration officer. That form, as included in our opening brief, specifically says that you have, you have agreed not to contest the finding of deportability, not that you are no longer eligible for relief, but in this waiver provision, it says that he is not eligible, I'm sorry, not able to contest the finding of removability. That's completely inseparate than any application for relief that he may be eligible to apply directly to the service. I thought this was in asylum only. The statute says asylum only before an immigration judge. It is completely silent as to immigration relief directly before the service. And I would also, one additional point. The government has corrected the error in our case. For example, the whole thrust of our argument is the surprise element, the surprise that he's not being informed of the actual waiver, the terms of the waiver at the time they purchased the ticket, at the time of his arrival, at the time of his detention. The government has provided in their response brief a footnote. It refers to the ESTA. It is a government program that started in January of 2009. I went on the website. There's a specific section in there entitled ---- Do you want to go into this, Judge Gould? Well, if ---- I think your time's expired. If I could just note that it specifically informs ----  Thank you, Your Honor. Thank you. All right. This matter will stand submitted.
judges: Korman, Gould, Callahan